IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **MARIAN J. HAMMOCK,** § | |
| § | |
| V. § | |
| § | A-13-CA-0707-AWA |
| **CAROLYN W. COLVIN,** § | |
| **COMMISSIONER OF THE** § | |
| **SOCIAL SECURITY ADMINISTRATION** § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are: Plaintiff's Complaint seeking reversal of the final decision of the Social Security Administration (Dkt. No. 3); Plaintiff's Brief in Support of Claim (Dkt. No. 19); and Defendant's Brief in Support of the Commissioner's Decision (Dkt. No. 21). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

**I. General Background and Administrative Law Judges' Findings**

Plaintiff Marian J. Hammock ("Hammock") filed her applications for disability insurance benefits and supplemental security income on January 18, 2007, alleging disability beginning January 5, 2007. (Tr. 213). After Plaintiff's applications were initially denied, and then again denied upon reconsideration, Plaintiff requested a hearing before an administrative law judge. The hearing was held on May 7, 2009, before ALJ Adolfo J. Vila, III. (Tr. 213). At the hearing, Plaintiff testified and testimony was heard from Dr. Nancy M. Tarrand, a medical expert, Jennifer Ann Maginnis, a vocational expert, and Plaintiff's "caretaker" Don Zauzig. (Tr. 213). Following the administrative hearing, ALJ Vila issued an unfavorable decision on July 24, 2009. (Tr. 216). He found that Hammocck suffered from the impairments of depression and post-traumatic stress disorder. *Id.* However, the ALJ also found that Hammock's impairments did not meet or equal any of the listings under the regulations, and that Hammock possessed the residual functional capacity

to perform a full range of work at all exertional levels but with moderate limitations on her ability to understand, remember, and carry out complex instructions, make complex work-related decisions, interact with the public, coworkers and supervisors, and respond appropriately to changes in work situations. (Tr. 219). The ALJ found Hammock retained the ability to perform her past relevant work as a school cafeteria worker, cook, and cook's helper, all of which are performed at the medium exertional level with the first two being skilled and the third unskilled. (Tr. 223-24). Finding Hammock capable of performing her past relevant work, the ALJ found Plaintiff had not been under a disability since January 5, 2007. (Tr. 224).

Upon receipt of the ALJ's decision, Hammock requested review by the Appeals Council, and on August 27, 2010, the Appeals Council issued an Order remanding Hammock's case back to an ALJ for further administrative proceedings. (Tr. 206-09). Specifically, the Appeals Council ordered that upon remand, the ALJ was required to evaluate all third part evidence, as necessary, per SSR 06-03p; give further consideration to Hammock's maximum RFC; if necessary, obtain evidence from a medical expert to clarify the nature and severity of Hammock's impairments; and if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Hammock's occupational base. (Tr. 208-09).

Upon remand, three subsequent hearings were held. The first was held on January 27, 2011, before ALJ Vila. (Tr. 91). The second was held on October 17, 2011, and the third on January 25, 2012, both before ALJ Richardson. ( Tr. 159, 172). Following the third hearing, ALJ Richardson issued an unfavorable decision on April 16, 2012, finding at step one of the sequential evaluation process that Hammock met the insured status requirements through December 31, 2011, and had engaged in substantial gainful activity from September 2007 through 2008. (Tr. 18). At step two,

the ALJ found Hammock suffered from the following severe impairments: obesity; depression; posttraumatic stress disorder (PTSD); substance abuse; borderline personality disorder; and anxiety. (Tr. 19). At step three, although finding Hammock's impairments to be severe, the ALJ found that Hammock did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the regulations. *Id.* Additionally, in evaluating Hammock's mental impairments under the "paragraph B" criteria of Listings 12.04 and 12.06, the ALJ found Hammock had a mild restriction in her activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation. (Tr. 19-20).

Before continuing on to step four, the ALJ found that based on Hammock's impairments, she had the RFC to lift and/or carry 25 pounds frequently and 50 pounds occasionally, stand and/or walk for a total of six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. (Tr. 20). Mentally, the ALJ found Hammock retained the ability to understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making, where interpersonal contact is only incidental to work performance, and contact with the public is not required. (Tr. 20). At step four of the sequential evaluation process and relying on the testimony of the vocational expert, the ALJ found Hammock was unable to perform any of her past relevant work as a cook's helper, kitchen helper, cafeteria cook, bus person, or fast food worker. (Tr. 26). Before continuing on to step five, the ALJ noted Hammock was born on May 9, 1964, has at least a high school education, and is able to communicate in English. (Tr. 26). At step five and again relying on vocational expert testimony, the ALJ found Hammock capable of performing other work existing in significant

numbers in the national economy, including work as a small products assembler, cleaner, and industrial cleaner/polisher. (Tr. 27). Finding Hammock capable of performing other work, the ALJ concluded that Hammock was not under a disability through the date of the decision. (Tr. 27-28). Hammock requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on April 11, 2013. (Tr. 5-7).

Hammock now brings this request for judicial review of the Commissioner's final decision raising four issues:

(1) the ALJ erred in failing to comply with the Appeals Council's remand order requiring evaluation of all third party evidence pursuant to SSR 06-3p;

(2) the ALJ erred in not addressing Hammock's VA disability status;

(3) the ALJ's RFC finding is not based upon substantial evidence; and

(4) the ALJ erred by failing to determine whether Hammock retains the ability to maintain employment.

The Commissioner argues that the ALJ did not err and that substantial evidence support's the Commissioner's decision finding that Hammock is not disabled during the relevant time period of January 5, 2007 through April 16, 2012.

### III.  Analysis

**A.    Administrative Definitions and Standards**

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

**B.    Standard of Review**

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64

F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the reviewing court may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994). The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g). Applying these standards, the Court will now consider Hammock's arguments.

**C.    Did the ALJ Comply with the Appeals Council's Remand Order Requiring Evaluation of Third Party Evidence Pursuant to SSR 06-3p?**

Hammock's first argument is that the ALJ failed to comply with the Appeals Council's remand order requiring the evaluation of all third party evidence pursuant to SSR 06-3p. Plaintiff's Brief at p. 15. Hammock maintains that the ALJ erred in failing to consider two written statements of Hammock's friend Kimberly Zauzig, the sister of her live-in caretaker Don Zauzig, and the statements of Zauzig himself, as directed by the Appeals Council. The ALJ discounted these statements because he found that the witnesses were not credible. Tr. 25.

In 2008, Kimberly Zauzig submitted a statement in which she stated that she had known Marian Hammock for two years. Tr. 542. She reported that Hammock is not functioning or processing age appropriately. *Id.* She reported that Hammock suffers mood swings and cannot

handle more than simple instructions. *Id.* She also stated that Hammock lies a lot and plays people against each other. *Id.* Her brother, Don Zauzig, represented himself as Hammmock's roommate and companion, but not her boyfriend. He volunteered to accept any disability payments on behalf of Hammock. Tr. 570. In 2007, Don Zauzig submitted a letter stating that Hammock cannot complete tasks and just lays about their shared apartment. Tr. 512. He also stated that Hammock does not do drugs and that she comes from a small town. *Id.* He describes her as "brutally honest." *Id.* He stated that she was different two years before when she "did not need a man" and was "self sufficient." *Id.* He states that he cares for her and has to remind her to take her medicine, but that she does some washing and cleaning. *Id.* He also submitted a statement in 2010. Tr. 649-650. In that statement he states that Hammock is manic, rambling and suicidal, cannot complete tasks, that he attends all appointments with her, and that he cannot leave her alone. *Id.* Kimberly Zauzig submitted another statement in 2010, stating that Hammock is introverted, spends most of the day in bed, will not order for herself in restaurants, that she is easily fool ed and manipulated—although she has good judgment, that she cannot handle her own finances, and that disability payments should be made to a payee. Tr. 654.

At her hearing in 2009, Hammock testified that Zauzig's only income was from umpiring baseball games on the weekends. Tr. 53. Don Zauzig also testified before the ALJ. Tr. 78. He testified that he started living with Hammock in about 2003 about a year after he met her in Pennsylvania. *Id.* He testified that he moved to Texas in 2008, but that Hammock stayed behind in Pennsylvania to take care of her sick father, and moved to Texas after the father died. Tr. at 79. He testified that Hammock does not do drugs. Tr. 80. He also testified that Hammock worked part-time at the time of the hearing. *Id.* He testified that he had to remind her to take her medicine, that he

supports her financially with his weekend umpire job, that she has nightmares, and that he does all the housework. Tr. 82-83. He also testified that she had become depressed in the last year to year and a half. Tr. 83. At the 2012 hearing before the ALJ, Hammock testified that she had been living with Don Zauzig for about five years. Tr. 177. She testified that she quit doing any cooking, laundry, and grocery shopping "about a year ago." Tr. 178. She testified that she remembers to take her medications on her own and that she sleeps and watches television. Tr. 179.

Don Zauzig also testified at this hearing. Tr. 183-187. He testified that he has a trust fund that his mother left him and that he works on the weekend as "an official for the State of Texas." Tr. 184. He later testified that his job was to umpire in a baseball league. Tr. 188. He also testified that Hammock has memory problems because her family physically and sexually abused her. Tr. 185. He testified that when he first met her, she was a "hard charger" who worked "50 to 60 hours a week." Tr. 185. He stated at the hearing that she does not remember to take her medications and that she sleeps all day. Tr. 186. He also stated that she does not take drugs and has never taken drugs. Tr. 187.

In determining if an individual is disabled, the ALJ must consider all medical opinions in a "case record together with the rest of the relevant evidence." 20 C.F.R. § 416.927(b). Relevant evidence includes non-medical sources. SSR 06-3p. Non-medical sources who have not had contact with the claimant in their professional capacity include spouses, relatives, friends, and neighbors. *Id.* In considering evidence from such non-medical sources, "it would be appropriate to consider such factors as . . . whether the evidence is consistent with other evidence, and *any other factors* that tend to support or refute the evidence." *Id.*

The ALJ's decision to disregard the testimony of the Zauzigs is supported by sufficient evidence in the record. If an ALJ explicitly discredits testimony and gives legally sufficient reasons for doing so, the court will defer to the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Furthermore, it is not error for an ALJ to disregard statements based on inconsistency of the testimony with evidence in the record. § 404.1520b; *Gonzales v. Astrue*, 231 Fed. App'x 322, 325 (5th Cir. 2007) (per curiam).

Hammock asserts that the ALJ's decision to omit a discussion of the Zauzigs' 2008 and 2010 statements amount to reversible error, since the Appeals Counsel required the ALJ to review all third party evidence and that the ALJ's reasoning for disregarding the Zauzigs' testimony, that they are not credible, is flawed. The Court disagrees. Hammock mischaracterizes the scope of the Appeals Counsel's remand. It directed that the ALJ review all third party evidence within the context of the applicable law. The ALJ is required to review *all relevant* third party evidence in reaching a conclusion. SSR 06-3p; 20 C.F.R. § 416.927(b). The regulations and Appeals Counsel required the ALJ to "generally" explain the weight of credibility given to the opinions of the Zauzigs "or otherwise ensure that the discussion of the evidence in determination . . . allows a . . . subsequent reviewer to follow the adjudicator's reasoning." SSR 06-3p. The record establishes that the ALJ met this standard in reaching his conclusion.

The ALJ made express credibility determinations and set forth the inconsistencies which led to his conclusions. *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995). First, the ALJ found that both Zauzigs' statements embellished the degree of Hammock's social impairment. Contrary to Ms.

9

Zauzig's testimony that the claimant was socially reclusive (Tr. 653-54), the record establishes that the claimant had a boyfriend since 2007, and that she was prescribed birth control on a regular basis during this period. Tr. 795, 796, 801.  The record indicates that the purpose of the birth control prescription was to preclude the possibility of pregnancy.  Tr. 1010, 1014.  Although claimant validly argues that a woman may take birth control pills for various reasons, there is substantial evidence in the record to support a conclusion that Hammock took birth control pills for pregnancy prevention.  Furthermore, evidence in the record shows that the claimant was able to order her prescriptions over the phone and visited her physician unaccompanied.  Tr. 1059.  Consequently, there is sufficient evidence in the record supporting the ALJ's decision to discount the testimony of the Zauzigs regarding Hammock's level of functioning.

Similarly, the ALJ was within his discretion to discount Don Zauzig's credibility based on his testimony that the claimant had never used or abused cocaine.  The ALJ properly found that Hammock's Pennsylvania VA records contradicted Mr. Zauzig's statement.  Specifically, a progress note dated January 3, 2007, indicates that Hammock's medical problems began "soon after [she] stopped weaning from her daily cocaine use."  Tr. 709.  In addition, VA records state that Hammock's "drug screen presumed positive for cocaine."  Tr. 1004.  Moreover, other VA records from 2006 and 2007 diagnose Hammock for substance abuse of crack cocaine, and refer to a son whom she gave up for adoption, whom she acknowledged at the hearing.  Tr. 55.  Although Hammock contends that the VA records referencing cocaine abuse was made in error, in light of Hammock and Zaurig's lack of credibility, such medical evidence sufficiently supports the ALJ's decision to discredit the trustworthiness of Mr. Zauzig's testimony.

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's decision to discredit the Zauzigs' testimony and that the regulations do not require an evaluation of the 2008 and 2010 statements.

**D.     Did Failing to Consider the VA's Grant of Disability Pension Amounts to Reversible Error?**

Hammock next contends that the ALJ's disregard of the August 7, 2008, VA disability report set forth in the record at Tr. 460-463, granting Hammock Veteran's Administration Disability status and benefits amounts to reversible error. Hammock acknowledges in her brief that "the full VA disability report has not been made a part of the record." Dkt. No. 19. Hammock submits that the ALJ's failure to address the VA report violates the regulations and Fifth Circuit precedent.

Before deciding whether a claimant is disabled, the Commissioner must evaluate all evidence in the record that may have bearing on the issue of disability, including rulings by other governmental agencies. *See* 20 C.F.R. §§ 404.1512(b)(5); 416.912(b)(5); SSR 06-3p . The ALJ need not give "great weight" to a VA disability decision if he adequately explains his reasoning. *Chambliss v. Massanari*, 269 F. 3d 520, 522 (5th Cir. 2001) (per curiam). But the burden lies with the claimant to "bring to our attention everything that shows that you are . . . disabled." 20 C.F.R. § 404.1512(a). Such evidence must be provided "without redaction" and must enable the decision maker to "reach conclusions about your medical impairment(s)." *Id.* at §404.1512(a) & (c). "When . . . despite efforts to obtain additional evidence, the evidence is insufficient to determine whether you are disabled, we will make a determination or decision based on the evidence we have." *Id.* § 404.1520b(d).

The Fifth Circuit has held that whenever a VA decision of disability is substantiated through medical evidence and reasoning, the ALJ is required to address the VA's finding of disability.

*Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994) (ALJ must address a VA decision of disability based on objective medical evidence not merely cumulative of other evidence); *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (ALJ committed reversible error by failing to properly scrutinize a VA rating of a hundred percent disability that was based on replete medical evidence in the record). Unlike *Latham* and *Loza*, the ALJ did not commit reversible error by not addressing the incomplete VA decision granting Hammock a non-service connected disability pension, since the record contains an insufficient explanation of the VA's conclusion.  Hammock concedes that the full VA decision is not part of the record but erroneously submits that the ALJ was still required to address it because he was made aware of the ruling on numerous occasions.  The record shows that during the October 17, 2011, hearing, the ALJ requested a copy of the VA decision. Tr. 170. Thereafter, Hammock's representative faxed an incomplete copy of the decision that "demonstrates the pension awarded" but was "missing pages."  Tr. 674.  The VA decision contains only four pages, and cuts off where the agency starts to explain its "reasons for decision."  Tr. 463.  Although an ALJ is required to address a VA decision, the ALJ did not commit reversible error by failing to address the VA ruling since the document in the record contained no explanation of how the agency reached its verdict.

The duty rested on Hammock to submit a document that fully explained why the VA awarded her a disability pension that would have enabled the ALJ "to reach a decision about [her] medical impairments."  20 C.F.R. § 404.1512.  And when there is "insufficient evidence to determine whether you are disabled, we will determine the best way to resolve the insufficiency or inconsistency."  *Id.* at § 404.1520b.  As such, the ALJ was not required to address the incomplete

VA decision in reaching his determination. Therefore, the Court finds that the ALJ's omission of the VA decision is not reversible error.

Additionally, even if the ALJ did err by failing to consider the incomplete VA award of disability, the error was harmless. The Fifth Circuit has determined that district courts reviewing social security benefit denials must apply a harmless error analysis in evaluating the effects of an ALJ's purported failure to consider certain evidence. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) ("Having determined that the ALJ erred in failing to state any reason for her adverse determination at step 3, we must still determine whether this error was harmless."). The *Audler* court further explained that "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). An error is harmless when it is inconceivable that a different administrative conclusion would have been reached had there been no error. *Bornette v. Barnhart*, 466 F.Supp.2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). In this case, because the evidence considered by the Veteran's Affairs Administration in awarding benefits was largely the same evidence considered by the ALJ, Hammock cannot show she suffered any prejudice by the ALJ's failure to consider the actual award of benefits.

**E.     Was the ALJ's RFC Judgment Supported by Substantial Evidence?**

Hammock contends that the ALJ's conclusion that she has the RFC to conduct routine step instructions at work is unsupported by substantial evidence in the record. In support of this proposition, she argues: (1) the ALJ improperly disregarded the medical opinions of Hammock's examining physicians and clinicians who concluded that she cannot perform routine step instructions;  (2) the ALJ's conclusion that Hammock's GAF scores conflict with evidence in the

record is misplaced; and (3) the ALJ based his findings on the "faulty" conclusion that Hammock suffers from a substance abuse disorder..

The ALJ is solely responsible for determining an applicant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). An individual's RFC is her ability to perform physical and mental work activities on a regular and continuing basis notwithstanding limitations from her impairments. § 404.1545. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p. The RFC assessment "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p. Regulation 96-8p requires that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b),[1] (c),[2] and (d)[3] of 20 C.F.R. 404.1545 and 416.945. Only after that may an RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.*

The ALJ fully complied with SSR 96-8p in determining Hammock's RFC. After reviewing all the evidence in the record, the ALJ concluded that Hammock has the RFC to: (1) lift and carry twenty-five pounds frequently and fifty pounds occasionally; (2) stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour work day; (3) understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not

---

[1] The claimant's physical abilities.

[2] The claimant's mental abilities.

[3] The claimant's other abilities affected by impairments.

require independent decision making; and (4) perform work where interpersonal contact is incidental to work performance and contact with the public is not required. Tr. 20.  Substantial evidence in the record supports the ALJ's RFC finding.  The ALJ relied on the medical expert, Barbara Felkins, who testified at the hearing.  Tr. 21-22.  Dr. Felkins opined that Hammock could perform routine step instructions and pointed out the various discrepancies in Hammock's medical records.  Tr. 21.  The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Generally, the medical opinion of a treating physician familiar with the claimant should be afforded considerable weight in determining disability.  *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).  However, "'when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony.'"  *Id.*  (quoting *Greenspan v. Shalala*, 38 f.3d 232, 237 (5th Cir. 1994)).  The good cause exception includes "'disregarding statements that are brief and conclusory . . . or otherwise unsupported by the evidence.'" *Id.*

Good cause support's the ALJ's decision to give limited weight to the medical opinions of Dr. Gaitawe-Johnson, Connie Alvarez-Sanders, Ph.D., Alison Godby, Ph.D., and Susan Houchins Ph.D in determining Hammock's RFC.  The ALJ gave limited weight to the medical opinion of Dr. Gaitawe-Johnson based on the inconsistencies found in her medical reports. The ALJ noted that Dr. Felkins, a physician who reviewed Dr. Gaitawe-Johnson's reports, found that Dr. Gaitawe-Johnson's January 10, 2011 progress notes conflicted with her October 21, 2010 report. Tr. 21.  Specifically, the January reported diagnosed Hammock with a GAF of 60 and notes that she "has . . . moderate symptoms . . . and moderate difficulty in social and occupational functioning." *Id.* at Tr. 1052 (*see also* physician's January 10, 2011 VA letter stating that claimant's bi-polar disorder and her PTSD

15

"have been fairly well controlled on psychotropic medications." *Id.* at 1074). In contrast, her October report states the claimant was fully disabled. *Id.* at 903. In addition, the ALJ found that Dr. Gaitawe-Johnson's GAF scores of 70 on July 29, 2010 and 60 on October 21, 2010 were inconsistent with a disabled diagnosis. *Id.* at 189, 918, 898. The GAF scores indicate that the claimant is not disabled and at most has moderate difficulty in social, occupational, or school functioning. *See Diagnostic And Statistical Manual of Mental Disorders - Text Revision* (*DSM-IV-TR*), 34 (4th ed. text. rev. 2000). Such "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)) . Therefore, it was proper for the ALJ to conclude that Dr. Gaitawe-Johnson's disability diagnosis was unsupported by the evidence based upon conflicting medical evidence in the record.

Also, the ALJ appropriately gave little weight to the opinions of Ph.D.'s Alvarez-Sanders, Godby, and Houchins, since all three substantially based their low GAF scores on the unsubstantiated complaints and testimony from Hammock and Mr. Zauzig. Tr. 774, 848, 926. As discussed earlier, the ALJ was within his discretion to afford little weight to the testimony of Mr. Zauzig and Hammock that Hammock never abused drugs, as it was contradicted by evidence in the record. Therefore, it is reasonable for the ALJ to discredit the clinicians' opinions that were substantially based on the subjective testimony of the claimant and Mr. Zauzig.

Importantly, Hammock's work history supports the ALJ's conclusion that she can perform routine step instructions. The Fifth Circuit held that working for several years with an alleged disability is evidence that the claimant is not disabled. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1305 n.11 (5th Cir. 1987). The record indicates

16

that the claimant worked part time from 2007 (after the onset of the alleged disability) through 2010. Tr. 42, 99, 981. In addition, in 2010, claimant collected over $7,000 in unemployment benefits from the Texas Workforce Commission. Tr. 652. The TWC states that unemployment benefits are "not for those who are so incapacitated by medical problems that they cannot work at all" and "claimants must be actively searching for full-time work . . . in order to be eligible" for benefits. *Unemployment Insurance Law - Eligibility Issues*, Tex. Workforce Comm'n.[4] Receiving such benefits is inconsistent with Hammock's claim of being disabled. *See Celebrezze v. O'Brien*, 323 F.2d 989, 992 (5th Cir. 1963) (Congress intended benefits for persons unable to work, not to substitute for unemployment benefits). Moreover, the ALJ noted that medical records reflect that Hammock traveled to Pennsylvania in 2010, which does not reflect the level of functioning claimed in various medical reports. Tr. 24, 1030. The Court finds that the ALJ's determination of Hammock's RFC is supported by substantial evidence.

**F.     Did the ALJ have a Duty to Separately Address Hammock's Ability to Maintain Employment?**

Hammock asserts that the ALJ's failure to reach a separate conclusion regarding her ability to maintain work amounts to reversible error. Namely, that the fluctuation of her GAF scores is an indication that her mental impairment waxes and wanes in its nature, which triggers a separate analysis of her ability to maintain employment. The Court disagrees.

An ALJ need not make a separate finding regarding an ability to sustain employment unless the severity of the claimant's physical ailment, by its nature, "waxes and wanes in its manifestation."

---

[4] *See* http://www.twc.state.tx.us/news/efte/ui_law_eligibility_issues.html (last visited October 31, 2014).

17

*Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). The severity of the ailment must prevent the applicant from sustaining work for a significant time. *Id.* The ALJ has discretion in exploring "this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination." *Id.* Occasionally, ailments are so severe that a separate analysis of sustained work capability is warranted. *Id.* That is not the case here. As discussed earlier, the ALJ found the medical opinions giving low GAF scores to Hammock to be less than credible. Since the ALJ properly disregarded the low GAF scores, claimant's contention that a separate analysis of her work capability is required due to her fluctuating ailment, is without legal merit.

Furthermore, even if the ALJ was required to make a separate finding regarding Hammock's capacity to sustain employment, he did so when he concluded that she had the RFC to perform simple tasks. When the ALJ shows an appreciation for the claimant's ability to sustain work in defining the RFC, a separate analysis is not required. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (ALJ citing 20 C.F.R. § 404.1545 and SSR 96-8p in his analysis of RFC was sufficient to establish an appreciation for the claimant's sustained work capacity). The ALJ cited 20 C.F.R. § 404.1545 and SSR 96-8p in his analysis of Hammock's RFC and therefore established an appreciation for her sustained work capabilities. Tr. 18. Accordingly, Hammock's contention that the ALJ was required to conduct a separate analysis of her ability to maintain employment is meritless.

### IV. Order

In summary, the ALJ applied the proper legal standards to Hammock's case, and those findings are supported by substantial evidence in the record. As such, the Plaintiff has failed to establish grounds for relief.

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner in this case and will enter judgment in favor of the Defendant.

SIGNED this 12th day of December, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE